**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROCKHILL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:18-CV-01050 |
| | ) | |
| J.M. DRILLING, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE TO J.M. DRILLING'S MOTION TO DISMISS, OR IN THE**
**ALTERNATIVE TO TRANSFER OR STAY ROCKHILL'S DECLARATORY ACTION**

Comes now Plaintiff, Rockhill Insurance Company ("Rockhill"), by and through counsel, and hereby responds in opposition to J.M. Drilling, LLC's ("J.M. Drilling") Motion to Dismiss, or in the Alternative to Transfer or Stay Rockhill's Declaratory Action.

**LAW AND ARGUMENT**

A. **Neither the Thibodeaux plaintiffs in the underlying suit (the "Underlying Thibodeaux Plaintiffs") nor Bellsouth Communications, LLC as workers' compensation intervenor in the underlying suit ("Bellsouth") (collectively, "Absent Parties") are necessary or indispensable parties to this suit under Rule 19.**

When considering required party joinder under Federal Rule of Civil Procedure ("Rule") 19 of an absent party, the Sixth Circuit employs "a three-step analysis." *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). The first step is to determine whether a party is necessary, *i.e.*, required to be joined under Rule 19(a)(1). *See id.* The second step is to determine whether the court has both personal and subject matter jurisdiction over the absent party. *See id.* The third step is to determine whether the party is indispensable, *i.e.*, whether under Rule 19(b) the action may continue as between the existing parties or should be dismissed. *See id.* at 200-01.

For purposes of this Response, Rockhill does not dispute that this Court lacks personal jurisdiction over the Underlying Thibodeaux Plaintiffs and lacks knowledge as to whether this Court has personal jurisdiction over Bellsouth.  Regardless, however, the Absent Parties cannot be considered necessary parties under Rule 19(a)(1), let alone indispensable parties under Rule 19(b).

    1.  *Necessary Party Principles under Rule 19(a)(1)(B)*

Most pertinently, an absent party is necessary under Rule 19(a)(1)(B) only if the absentee:

claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*See* Fed. R. Civ. P. 19(a)(1)(B).  As drawn from Rule 19(a)(1)(B), absent parties that purportedly qualify as necessary under Rule 19(a)(1)(B)(i) or (ii) must have, as a preliminary matter, "a legal interest in the subject of the action."  *See Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 532 (W.D. Tenn. 2015).

After showing an interest, an absent party is necessary if its absence would, practically speaking, "impair or impede" such party's ability to protect its articulated interest.  *See* Fed. R. Civ. P. 19(a)(1)(B)(i).   However, if an absent party's interests are adequately represented by an existing party, "then there is no practical prejudice to the absent party."  *See Williams-Sonoma*, 304 F.R.D. at 533.  When analyzing adequate representation, the Sixth Circuit assesses: (1) whether a present party would make all the arguments an absent party would make, (2) whether such present party can capably and willingly make such arguments, and (3) whether the absent party offers any additional or necessary element such present party would neglect.  *See Am. Express Travel Related Servs., Co., Inc. v. Bank One-Dearborn, N.A.*, 195 Fed. App'x 458, 461

(6th Cir. 2006).  If these factors favor adequate representation, the absent party "would not be disadvantaged by not being joined as a party."  *See id.*  As such, adequately represented absent parties are not considered necessary under Rule 19(a)(1)(B)(i).  *See id.*; *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Hertz, LLP*, 601 F. Supp. 2d 991, 1001-02 (W.D. Tenn. 2009); *see also Scottsdale Ins. Co. v. B & G Fitness Ctr., Inc.*, No. 4:14–CV–187–F, 2015 WL 4641530, at *5 (E.D.N.C. Aug. 4, 2015) (finding underlying plaintiffs were not necessary parties because insured adequately represented their interests).  Relatedly, according to persuasive authority, when the absent party could intervene in the suit without destroying the court's jurisdiction, the absent party has the means to protect its interest and is not necessary.  *See Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 201 (5th Cir. 2017) (noting such in an insurance coverage dispute where defendants argued underlying plaintiffs were necessary).

Alternatively, after showing an interest, an absent party is necessary if an existing party faces "substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).  Vitally, Rule 19 speaks of inconsistent *obligations*, not mere inconsistent *results*.  *See id.*; *Williams-Sonoma*, 304 F.R.D. at 533.  As such, it is irrelevant for Rule 19(a)(1)(B)(ii) purposes that "a party faces the possibility of multiple actions—and potentially even logically inconsistent judgments— . . . if the party is not at risk of inconsistent obligations."  *See Williams-Sonoma*, 304 F.R.D. at 533; *see also Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7-8 (1990) (holding that joint tortfeasors are not necessary parties despite the potential for judicial inefficiency and inconsistency).  "Inconsistent obligations" only exist "when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."  *See Williams-Sonoma*, 304 F.R.D. at 534 (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

2. *The Absent Parties are not Necessary Parties*

Here, assuming J.M. Drilling has sufficiently articulated the Absent Parties' interest, it cannot establish practical impairment of such interest or a substantial risk of inconsistent obligations.  First, there is no practical impairment under Rule 19(a)(1)(B)(i) because J.M. Drilling adequately represents the Absent Parties' interest.  *See Bank One-Dearborn, N.A.*, 195 Fed. App'x at 461; *Glassman, Edwards, Wade & Wyatt, P.C.*, 601 F. Supp. 2d at 1001-02; *Williams-Sonoma*, 304 F.R.D. at 532, 534.  J.M. Drilling shares an identical interest with the Absent Parties: coverage under the Rockhill policy.  Certainly, J.M. Drilling does not indicate anywhere in its Memorandum that (1) it will refuse to make some argument in this suit that the Absent Parties otherwise would, (2) it is incapable or unwilling to make some arguments in favor of coverage that the Absent Parties otherwise would, and (3) the Absent Parties "would offer any necessary element to the proceedings that [J.M. Drilling] would neglect."  *See Bank One-Dearborn, N.A.*, 195 Fed. App'x at 461.

As such, each of the adequate representation factors considered with Rule 19(a)(1)(B)(i) point to a finding of adequate representation.  *See id.*; *see also B & G. Fitness Ctr., Inc.*, 2015 WL 4641530 at *5 (finding underlying plaintiffs were not necessary parties because insured adequately represented their identical interests).  Likewise, if the Absent Parties feel that for some unknown reason J.M. Drilling will not adequately represent their identical interest, the Absent Parties may intervene in this case to protect that interest accordingly.  *See Singing River Health Sys.*, 850 F.3d at 201.  Given J.M. Drilling's adequate representation and the Absent Parties' ability to intervene, the Absent Parties are not necessary parties under Rule 19(a)(1)(B)(i).

Second, there is no risk—let alone a substantial risk—of Rockhill or J.M. Drilling incurring inconsistent obligations.  Regardless of whether Rockhill prevails in this declaratory action, Rockhill will not face inconsistent *obligations*.  For example, if Rockhill prevails, it incurs no

obligation whatsoever, *i.e.*, it owes J.M. Drilling no coverage and correspondingly incurs no obligation to the Absent Parties to pay their judgment against J.M. Drilling. Even if the Absent Parties then successfully relitigated the coverage issue directly against Rockhill, Rockhill could comply with such court's order and pay the Absent Parties without violating any order in the prior case. Certainly, any order in the prior case would not forbid Rockhill from paying the judgment that J.M. Drilling owes; rather, it would only specify that Rockhill had *no contractual obligation* to pay such judgment. As such, though the *results* of the cases may be inconsistent, the *obligations* that Rockhill would incur would not be inconsistent. *See Williams-Sonoma*, 304 F.R.D. at 533; *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984). Such potential for mere inconsistent judgments or results is no different than the risk that arises in cases where not all joint tortfeasors are joined. Despite this potential, the Supreme Court has held that joint tortfeasors are not necessary parties under Rule 19(a). *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7-8 (1990).

Conversely, if Rockhill loses this case, Rockhill must then pay J.M. Drilling's judgment obligation. Based on *res judicata* and collateral estoppel principles, Rockhill could not later relitigate the coverage issue with J.M. Drilling and would be collaterally estopped from raising the same issue with the Absent Parties. As such, an inconsistent obligation would be impossible.

Relatedly, J.M. Drilling would never face any risk of inconsistent obligations if the Absent Parties are not joined. Here, the only outcomes for J.M. Drilling are that its obligation to pay the judgment out of its own funds will be removed because coverage exists, or it will retain such obligation because no coverage exists. Certainly, if the former, the Absent Parties will not pursue any additional litigation, and if the latter, the Absent Parties may relitigate the coverage issue with Rockhill and, if successful, would only *remove* an obligation from J.M. Drilling, not impose one.

Vitally, J.M. Drilling's own language in its Memorandum implicitly acknowledges the nonexistent risk of inconsistent obligations. J.M. Drilling refers only to inconsistent "outcomes" and "judgments." (J.M. Drilling Memorandum, pp. 6, 7). As is clear from *Williams-Sonoma* and *Bedel*, such inconsistent "outcomes" and "judgments" are just inconsistent *results*, not impermissible inconsistent *obligations*. *See Williams-Sonoma*, 304 F.R.D. at 533; *Bedel*, 103 F.R.D. at 81. Therefore, as implicitly admitted by J.M. Drilling, there is no risk of inconsistent obligations if the Absent Parties are not joined, thus Rule 19(a)(1)(B)(ii) is not implicated.

Lastly, it should be highlighted that J.M. Drilling's Memorandum makes no effort to meaningfully address the adequate representation and inconsistent obligations issues. Instead, its Memorandum forgoes meaningful application of such principles and instead relies purely upon non-binding authority for the proposition that, as a general rule, underlying plaintiffs are necessary parties in suits such as this. (J.M. Drilling Memorandum, p. 5-6). Notably, much of the authority that J.M. Drilling cites for this proposition is not directly on point or is dicta. *See, e.g.*, *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 274 (1991) (concerning actual case or controversy requirement, not Rule 19); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 n.5 (3d Cir. 1986) (dicta); *Ranger Ins. Co. v. United Housing of New Mexico, Inc.*, 488 F.2d 682, 684 (5th Cir. 1974) (further clarified and narrowed in *Singing River Health Sys.*, 850 F.3d at 201); *Allstate Prop. and Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 690 n.2 (N.D. W. Va. 2013) (dicta); *Star Ins. Co. v. Treible's Wrecker Ser., Inc.*, No. 3:12–cv–0047, 2012 WL 2389750, at *2 (M.D. Penn. June 22, 2012) (not directly analyzing necessary party issue); *Ranger Ins. Co. v. Events, Inc.*, No. 03–2831, 2004 WL 2004545, at *5 (E.D. La. Sept. 8, 2004) (discussing only intervention and never referencing Rule 19); *Alonzo v. State*, No. 02–2792, 2002 WL 31654918, at *4 (E.D. La. Nov. 21, 2002) (involving fraudulent joinder and whether an *insured* was a necessary party).

Of course, there is also non-binding authority where courts concluded underlying plaintiffs were not necessary parties for various reasons.  *See, e.g.*, *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 201 (5th Cir. 2017); *B & G. Fitness Ctr., Inc.*, 2015 WL 4641530 at *3-5; *Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 237-39 (E.D. Penn. 2014); *Hartford Cas. Ins. Co. v. Cardenas*, 292 F.R.D. 235, 241-46 (E.D. Penn. 2013); *Black Diamond Girl Scout Council, Inc. v. St. Paul Fire & Marine Ins. Co.*, 621 F. Supp. 96, 97-98 (S.D.W. Va. 1985).  But, more to the point given that the Sixth Circuit has never considered the issue, the necessary party analysis that Sixth Circuit courts utilize heavily militates in favor of finding that the Absent Parties are not necessary parties given J.M. Drilling's adequate representation of their interests and the nonexistent risk of inconsistent obligations.  Accordingly, the contrary, non-binding authority J.M. Drilling cites is wholly unpersuasive, and the Absent Parties are not necessary parties.

3.   *Indispensable Party Principles under Rule 19(b)*

If an absent party is considered necessary but joinder is not feasible, Rule 19(b) sets forth four non-exclusive factors that the court should consider in determining whether such party is truly indispensable such that the suit should be dismissed.  *See* Fed. R. Civ. P. 19(b).  These factors are: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" (2) "the extent to which any prejudice could be lessened or avoided by . . . protective provisions in the judgment; . . . shaping the relief; or . . . other measures;" (3) "whether a judgment rendered in the person's absence would be adequate; and" (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  *See id.*

Indispensability depends on "the context of [the] particular litigation."  *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968).  Though, "[i]deally, all parties would be before the court," Rule 19 is applied pragmatically, and "simply because some

forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if *meaningful relief can still be accorded*." *See Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 822 F.2d 613, 618 (6th Cir. 1987) (quoting *Smith v. United Bhd. of Carpenters and Joiners of Am.*, 685 F.2d 164, 166 (6th Cir. 1982)) (emphasis added).

4.   *The Absent Parties are not Indispensable Parties*

Here, assuming, *arguendo*, that the Absent Parties are necessary parties, they are not indispensable because the Rule 19 factors do not support such a finding.  First, J.M. Drilling notes that "a decision in this case could substantially reduce [the Absent Parties'] ability to recover on their judgment against J.M. Drilling." (J.M. Drilling Memorandum, p. 7-8).  Notably, J.M. Drilling does not allege that it is prejudiced in any manner by this matter proceeding.  Moreover, J.M. Drilling utterly fails to explain exactly how this action prejudices the Absent Parties.  Of course, if Rockhill is successful in this case, the Absent Parties may have a decreased chance at recovery. However, this risk for the Absent Parties exists in any action involving this coverage dispute, *even if they are parties to it*.   As such, couching the purported prejudice to the Absent Parties in this manner is wholly unpersuasive because this risk is not increased by their absence from this suit. *Compare PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203 (6th Cir. 2001) (finding no prejudice to the absent party while noting that the issue was "a matter of contract interpretation for which [the absent party's] presence and input [wa]s not necessary," thus meaning that "the prejudice that [the movant] perceive[d] ha[d] nothing to do with [the absent party's] absence")

Regardless, as explained above, any risk of prejudice to the Absent Parties is necessarily minimal given the identity in interests between them and J.M. Drilling as to coverage.  *See, e.g., Evangelical Lutheran Church in Am. v. Atlantic Mut. Ins. Co.*, 173 F.R.D. 507, 508-09 (N.D. Ill.

1997) (finding in an insurance coverage dispute that the "identity of interest" between the insured and the absent underlying plaintiff meant that "the first factor weigh[ed] *heavily* against finding that [the underlying plaintiff] [wa]s indispensable").  Given this identity of interest and no indications that J.M. Drilling will not vigorously litigate this case, J.M. Drilling is adequately representing the Absent Parties' interest.  Accordingly, any prejudice the Absent Parties may experience will be minimal, and this factor heavily militates against indispensability.

Second, J.M. Drilling argues that this Court cannot "shape a decision that would substantially lessen the risk of prejudice."  (J.M. Drilling Memorandum, p. 8).  However, as just noted, J.M. Drilling has failed to identify any material risk of prejudice the Absent Parties face by their absence.  Where no true prejudice is identified, this second factor becomes largely immaterial to the indispensability analysis.  *See PaineWebber, Inc.*, 276 F.3d at 205 (noting that this factor "becomes less important because of the small degree of potential prejudice that would occur if th[e] action proceed[ed] without [the absent party]").  Moreover, to the extent the Absent Parties truly feared prejudice, "other measures," *see* Rule 19(b)(2)(C), to address any prejudice could be addressed by their intervention.  *See, e.g.*, *U.S. Fire Ins. Co. v. Milton Co.*, 938 F. Supp. 56, 57-58 (D.D.C. 1996) (noting prejudice could be avoided by intervention).  As such, this factor is immaterial because (1) no material risk of prejudice has been identified and articulated, and (2) even some prejudice may exist, it could be addressed by the Absent Parties' intervention.

Third, apparently conceding the third factor, J.M. Drilling does not argue that a judgment rendered without the Absent Parties would be inadequate.  *See* Fed. R. Civ. P. 19(b)(3).  Of course, a judgment rendered in the absence of the Absent Parties remains "adequate" because it would settle the coverage dispute existing between Rockhill and J.M. Drilling.  Rockhill and J.M. Drilling are the only two parties to the policy and both will be bound by this Court's judgment, regardless

of the presence of the Absent Parties.  Thus, the third factor heavily militates in favor of finding that the Absent Parties are not indispensable parties.

Finally, J.M. Drilling argues that Rockhill has an adequate alternative remedy in Louisiana. Granted, this alternative remedy does exist and may be adequate.  However, the Sixth Circuit recognizes that where, as here, each of the other factors militate against an indispensable party finding that this factor alone should not be dispositive.  *See PaineWebber, Inc.*, 276 F.3d at 205 (finding the fourth factor favored dismissal but declining to find indispensability); *Local 670*, 822 F.2d at 622 (noting that "the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice" and that "[s]ome additional interest of either the absent party, the other properly joined parties . . . , or the judicial system must also be present").  Accordingly, though Rockhill may have an adequate alternative remedy in Louisiana, this factor alone cannot be the sole ground upon which an indispensable party finding is based.

In sum, because most of the Rule 19(b) factors militate against an indispensability finding, the Absent Parties are not indispensable.  Non-binding cases holding that underlying plaintiffs are not indispensable parties further support this position.  *See, e.g.*, *Evangelical Lutheran Church in Am.*, 173 F.R.D. at 508-09; *Milton Co.*, 938 F. Supp. at 57-58; *Austin Fireworks, Inc. v. T.H.E. Ins. Co.*, 809 F. Supp. 829, 831 (D. Kan. 1992); *see also* Wright & Miller, Fed. Prac. & Proc. Civ. § 1619 (3d ed.) (noting that, today, "it is unlikely that the injured party would be declared indispensable under Rule 19(b) [in a coverage dispute]").  Thus, based on the Rule 19(b) factors, this case's circumstances, and persuasive authority, "meaningful relief can still be accorded" without the Absent Parties, and they are not indispensable.  *See Local 670*, 822 F.2d at 618.

**B.  The Court should exercise its discretion to hear this declaratory judgment suit because the applicable factors militate in favor of exercising such discretion.**

1. *Federal Declaratory Judgment Act Principles*

Federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." *See* 28 U.S.C. § 2201(a).  Unlike most state declaratory judgment acts, the federal declaratory judgment statute ("DJ Statute") does not require that all parties who may be interested in the suit be joined as defendants. *See W. Cas. & Sur. Co. v. Beverforden*, 93 F.2d 166, 168 (8th Cir. 1937); *Reardon v. Penn.-N.Y. Cent. Transp. Co.*, 323 F. Supp. 598, 599 (N.D. Ohio 1971); *TIG Ins. Co. v. Merryland Childcare and Dev. Ctr., Inc.*, No. 04-2666 B, 2005 WL 3008646, at *4 (W.D. Tenn. Nov. 9, 2005).  Federal law wholly governs party joinder and jurisdiction under the DJ Statute with no regard for state law. *See* Fed. R. Civ. P. 57; *TIG Ins. Co.*, 2005 WL 3008646 at *4.

Sixth Circuit courts analyze five factors in exercising their discretion to hear declaratory actions:  (1) "[w]hether the declaratory action would settle the controversy;" (2) "whether the declaratory action would serve a useful purposes in clarifying the legal relations in issue;" (3) "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata;'" (4) "whether the use of a declaratory action would increase the friction between . . . federal and state courts and improperly encroach upon state jurisdiction;" and (5) "whether there is an alternative remedy which is better or more effective." *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  These factors have no respective weights, and district court's jurisdiction decision is reviewed for an abuse of discretion. *See id.* at 758, 59.

### 2. *Factors Militate in Favor of the Court Exercising Jurisdiction*

Here, this Court should exercise its discretion to hear this declaratory action because the factors militate in favor of jurisdiction.  As an initial matter, J.M. Drilling's Memorandum utterly fails to apply the five factors.  (J.M. Drilling Memorandum, pp. 9-10).  Instead, in nothing more than a rehash of its Rule 19 arguments, the Memorandum simply argues that not all "interested"

parties are joined.  (*Id.*).  However, J.M. Drilling's focus on "interested" parties not being joined is entirely misplaced because, contrary to state declaratory judgment acts, the DJ Statute does not require that all parties claiming an interest in the matter be joined.  *See Beverforden*, 93 F.2d at 168; *Reardon*, 323 F. Supp. at 599; *TIG Ins. Co.*, 2005 WL 3008646 at *4.  Thus, as a statutory matter, though the Absent Parties arguably have some "interest" in this suit, Rockhill had no obligation to join them as defendants.  As such, this state law interested party standard that J.M. Drilling attempts to rely upon is not a valid standard for declining jurisdiction in this federal action.

Proper application of the five factors shows why jurisdiction is appropriate here.  First, addressing the first two factors, *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) (noting "the first factor is often considered in connection with [the second factor]"), this suit would settle the present coverage controversy between Rockhill and J.M. Drilling and would clarify their legal relations under the policy.  Rockhill and J.M. Drilling are the only two parties to the policy.  (Complaint, Ex. G, p. 7).  This suit is wholly concerned with settling and clarifying a coverage dispute between these two parties stemming from the Absent Parties' judgment against J.M. Drilling.  Certainly, this suit will definitively determine the coverage dispute that persists between the only two parties to the policy.

Granted, some Sixth Circuit cases note that an additional fact cutting against the first two factors is the absence of the underlying plaintiffs in the insurance coverage declaratory action.  *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004).  However, the Sixth Circuit has since substantially clarified its often-conflicting jurisprudence on the first two factors and has largely called into doubt these cases.  *See Flowers*, 513 F.3d at 555-57.  Specifically, in *Flowers*, the Sixth Circuit opted for a contrary approach from *Travelers* and

*Bituminous* and analyzed the first two factors by focusing on the declaratory action itself, not the underlying suit triggering the coverage dispute. *See id.* In opting against *Travelers* and *Bituminous*'s rationale, the court adopted the rationale of a Sixth Circuit case involving an insurance coverage declaratory suit to which the *only* parties were the insurer and the insured. *See id.* at 555, 557 (citing *West Am. Ins. Co. v. Prewitt*, 208 Fed. App'x 393, 396, 397 (6th Cir. 2006)).

More directly, post-*Flowers*, Sixth Circuit district courts have directly confronted and rejected arguments that the first two factors militated against exercising jurisdiction when the underlying plaintiffs were not joined as parties to the declaratory action. *See, e.g.*, *Setco Auto. (NA), Inc. v. Tokio Marine & Nichido Fire Ins. Co., Ltd. (US Branch)*, No. 09-1210, 2010 WL 11602455, at *4-5 (W.D. Tenn. Dec. 3, 2010) (noting "[w]hile not all of the parties in the Underlying Actions are before the Court[,] . . . exercising jurisdiction would at least determine [the insurer's] liability to [the insured]"); *Secura Ins. Co. v. Gray Const., Inc.*, 661 F. Supp. 2d 721, 727-28 (W.D. Ky. 2009) (noting "the plaintiff in the underlying action is not required to clarify the legal relationship between [the insurer], [the alleged insured] and [the insured]"). Underpinning such applications of these factors post-*Flowers* is the acknowledgement that the appropriate focus is settling and clarifying the dispute between *the parties to the declaratory judgment suit*, not the parties to the underlying suit. *See Setco Auto.*, 2010 WL 11602455 at *4-5; *Secura Ins. Co.*, 661 F. Supp. 2d at 727-28. Properly focusing only on Rockhill and J.M. Drilling, this suit will completely settle and clarify as between the only contract parties whether coverage exists under the Rockhill policy. As such, the first two factors both militate in favor of exercising jurisdiction.

Turning to the third factor, this declaratory action is not being used for "procedural fencing." Apparently in reference to this factor, J.M. Drilling makes much of its filing of a cross-claim in the subsequent Louisiana declaratory judgment action that contains a "coercive" claim

for breach of contract. (J.M. Drilling Memorandum, p. 9). The Sixth Circuit does recognize that improper "procedural fencing" may exist when a declaratory action is filed "mere days or weeks before the coercive suits filed by a 'natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum" because this tactic encourages "races to the courthouse." *See AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004).

However, though J.M. Drilling made a cross-claim in the subsequent Louisiana declaratory action for breach of contract, such claim arose only in the context of a *non-coercive declaratory action*, not as an original suit. This is not the type of "coercive," original claim the court fears in *Dale*, and J.M. Drilling cites to no authority holding that a "coercive" cross-claim raises "procedural fencing" concerns. Moreover, in this type of coverage dispute, Rockhill is as much a "natural plaintiff" as J.M. Drilling given that it is likewise a party to the policy. Lastly, Rockhill certainly cannot be accused of racing to the courthouse to preemptively file this declaratory action because this suit was filed about two and half years after the underlying suit (to which Rockhill was not named a party) began. *Compare Flowers*, 513 F.3d at 550, 558 (finding no procedural fencing where the declaratory action was brought almost three years after the underlying suit began and to which the insurer was not joined) (Complaint; J.M. Drilling Memorandum Ex. D).

More importantly, J.M. Drilling does not seem to directly allege that Rockhill acted with an "improper motive" for purposes of this third factor. (J.M. Drilling Memorandum, pp. 9-10). The Sixth Circuit is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *See Flowers*, 513 F.3d at 558. Further, when an insurer files a declaratory action after the underlying case is filed, the Sixth Circuit gives the insurer "the benefit of the doubt that no improper motive fueled the filing of th[e] action." *See id.* (quoting *Bituminous*, 373 F.3d at 814). Thus, here, where (1) there was no "race to the courthouse," (2) the record does

not contain any evidence of an improper motive by Rockhill, and (3) Rockhill filed this suit well after the underlying suit was filed, this third factor militates in favor of exercising jurisdiction.

Because the fourth factor is irrelevant given the underlying suit already having a judgment entered and the subsequent declaratory action being filed in federal court, the last factor to analyze is whether there is a better, more effective alternative remedy. *See id.* at 554. Apparently, J.M. Drilling posits that the subsequently filed Louisiana federal court declaratory action is a better remedy, largely because all "interested" parties are joined to it. (J.M. Drilling Memorandum, pp. 9-10). However, as explained above, this "interested" party standard imported from state law is an irrelevant consideration under the DJ Statute. As such, this is an entirely improper basis upon which to argue that the subsequent Louisiana federal court declaratory action is a better remedy.

Regardless, even assuming that the subsequent declaratory action is a better remedy, this is the only factor that militates against this Court exercising jurisdiction. Several Sixth Circuit cases demonstrate that, when it is only this factor that militates against jurisdiction, the court may properly hear the declaratory action. *See Flowers*, 513 F.3d at 563; *Prewitt*, 208 Fed. App'x at 400; *Secura Ins. Co.*, 661 F. Supp. 2d at 731. Here, the first, second, and third factors all militate in favor of exercising jurisdiction, the fourth factor is irrelevant, and the fifth factor is, at best, debatable. Under such circumstances and consistent with Sixth Circuit precedent, this Court should assume jurisdiction over this declaratory judgment action. *See Flowers*, 513 F.3d at 563; *Prewitt*, 208 Fed. App'x at 400; *Secura Ins. Co.*, 661 F. Supp. 2d at 731.

**3.  The first-to-file rule applies, and no equitable exception to the rule applies.**

1. *First-to-File Rule General Principles*

The first-to-file rule is designed "to manage overlapping litigation across multiple [federal] districts" and, to this end, holds generally that only a first filed suit should proceed. *See Baatz v.*

*Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).  Sixth Circuit courts analyze three factors in analyzing whether the rule applies:  "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake."  *See id.*  As to the second and third factors, the parties and the issues in the respective cases need not be identical and need only to "substantially overlap."  *See id.* at 790, 791.

If the factors weigh in favor of the rule, the court then must "determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the . . . rule."  *See id.* (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551-52 (6th Cir. 2007)).  As most typically arises when a preemptive declaratory action for non-infringement of a copyright, trademark, or patent is filed by an unnatural plaintiff (the alleged infringer) and then a subsequent substantive, coercive suit for infringement is filed by a natural plaintiff (the holder), the first-filed declaratory action will often give way to the subsequently filed action, *i.e.*, the rule will not apply.  *See, e.g.*, *Encore Furniture Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 669 (M.D. Tenn. 2017); *DigiTrax Entm't, LLC v. Universal Music Corp.*, 21 F. Supp. 3d 917, 925-26 (E.D. Tenn. 2014).  However, despite equitable exceptions to the first-to-file rule, the Sixth Circuit explicitly recognizes that "deviations from the rule should be the exception, rather than the norm" and that "declining to apply the first-to-file rule should be done rarely."  *See Baatz*, 814 F.3d at 792, 793.  A district court's application of the rule is reviewed for abuse of discretion.  *See id.* at 789.

2.   *Each First-to-File Rule Factor Applies*

Here, as apparently conceded by J.M. Drilling because it never analyzes the three factors in its Memorandum (J.M. Drilling Memorandum, pp. 12-13), each factor cuts in favor of applying the first-to-file rule.  First, it is indisputable that this suit was filed before the Louisiana declaratory

action.  The Complaint in this suit was filed on March 26, 2018, and the Louisiana declaratory action was not filed until April 12, 2018 (Complaint; J.M. Drilling Memorandum, Ex. D).

Second, the issues in this suit are identical to the issues at play in the Louisiana declaratory action.  Both suits revolve around the same issue:  whether J.M. Drilling has coverage under Rockhill's policy.  In fact, J.M. Drilling acknowledges this identity in its Memorandum as it states, "[t]he precise and very issues brought before this Court by Rockhill are already at issue in the Louisiana Federal Action."  (J.M. Drilling Memorandum, p. 9).

Third, the parties in the two suits substantially overlap.  The Louisiana declaratory action contains three parties who are not joined in this suit:  the Underlying Thibodeaux Plaintiffs, Bellsouth, and the underlying insurer.  Of these three parties, only the Underlying Thibodeaux Plaintiffs and Bellsouth have any type of interest in this suit as the underlying insurer naturally has its own coverage obligations that are wholly independent from the Rockhill policy.  As discussed above, the Underlying Thibodeaux Plaintiffs and Bellsouth may have some interest in this suit, but their interest is identical to J.M. Drilling's interest and is adequately represented by J.M. Drilling. Thus, their absence has no substantive effect on the issues or arguments raised in this suit.

And, in any event, the parties only need to "substantially overlap" for first-to-file rule purposes.  *See Baatz*, 814 F.3d at 790, 791.  Here, the only two parties to the policy are joined, and the Absent Parties and J.M. Drilling's interests identically align.  As such, the parties in the two suits "substantially overlap" and satisfy this factor.  *See, e.g.*, *Collier v. MedCare Inv. Corp.*, No. 3:18–cv–00331, 2018 WL 2364050, at *7 (M.D. Tenn. May 24, 2018) (recognizing lack of identity of several parties in the respective suits but still finding substantial overlap).  Regardless, even assuming the parties do not "substantially overlap," two of the three factors indisputably cut in favor of applying the first-to-file rule such that the general rule should still apply.

### 3. *No Exception to the First-to-File Rule Applies*

Here, J.M. Drilling rests its argument that the first-to-file rule should not apply purely on equitable considerations.  (J.M. Drilling, pp. 12-13).  Specifically, J.M. Drilling argues: (1) this declaratory action should give way to a subsequent, partially coercive suit, and (2) this declaratory action was brought in anticipation of another coverage-related suit.  Both arguments fall flat.

First, as noted above, J.M. Drilling's attempt to frame the subsequent Louisiana declaratory action as "coercive" is misguided.  In so arguing, J.M. Drilling fails to appreciate the fact that the subsequent suit was an entirely *non-coercive declaratory judgment action* concerning admittedly identical issues as this suit.  (J.M. Drilling Memorandum, p. 9).  The only allegedly "coercive" component of this suit arose when J.M. Drilling answered and made a cross-claim against Rockhill for breach of contract.  (J.M. Drilling Memorandum, Ex. F).  Undoubtedly, J.M. Drilling will bring this same claim against Rockhill as a counterclaim once it files its answer in this suit.

Such a scenario where the subsequent suit is an identical declaratory action and the only allegedly "coercive" aspect of it arises in a cross-claim is totally unlike the scenarios where courts typically conclude that equitable considerations militate against the rule.  Instead, nearly all such cases involve scenarios where an alleged copyright, trademark, or patent infringer learns that an infringement suit by the natural plaintiff is imminent and, in attempt to undercut the holder's suit, rush to file a declaratory action seeking a declaration of noninfringement.  *See, e.g.*, *Encore Furniture*, 281 F. Supp. 3d at 669; *DigiTrax Entm't*, 21 F. Supp. 3d at 925-26.  J.M. Drilling cites no case law where equitable considerations relating to a subsequent coercive action were triggered based on a cross-claim made in an otherwise identical subsequent suit, let alone a cross-claim that will inevitably also be raised as a counterclaim in the first-filed suit.  Accordingly, J.M. Drilling's novel, but readily distinguishable, argument in this regard should be disregarded.

Second, J.M. Drilling's argument that this suit is an improper anticipatory filing is equally unpersuasive.  In its Memorandum, J.M. Drilling decries the timing of this suit because it was filed shortly before the trial in the underlying suit.  (J.M. Drilling Memorandum, p. 13).  However, by so arguing, J.M. Drilling ignores that Sixth Circuit courts have repeatedly expressed favor for declaratory actions on insurance coverage that were filed *after* the underlying suit had time to develop.  *See, e.g.*, *Flowers*, 513 F.3d at 558 (noting favorably to the insurer that it filed its declaratory action "several years" after the underlying suit began); *Bituminous*, 373 F.3d at 814 (noting favorably to the insurer that it filed its declaratory action "two years" after the underlying suit began); *Penn. Nat'l Mut. Cas. Ins. Co. v. HVAC, Inc.*, 679 F. Supp. 2d 863, 869 (E.D. Tenn. Dec. 30, 2009) (noting favorably to the insurer that it filed its declaratory action "over two years" after the underlying suit began); *Secura Ins. Co.*, 661 F. Supp. 2d at 728-29 (noting favorably to the insurer that it filed its declaratory action "one year" after the underlying suit began). Consequently, by waiting to file this suit until the underlying suit was well-developed, Rockhill simply engaged in a practice that Sixth Circuit courts often commend.  Thus, J.M. Drilling's efforts to paint Rockhill in an inequitable light based on the time it filed this suit is entirely baseless.

Similarly, in focusing on the Underlying Thibodeaux Plaintiffs "repeatedly plac[ing] Rockhill on notice that litigation would follow against it once a Judgment was obtained [in the underlying suit]" and arguing that this coverage issue should be litigated in Louisiana, J.M. Drilling ignores several pertinent facts showing no inequity.  (J.M. Drilling Memorandum, p. 13). Rockhill notified J.M. Drilling of its coverage denial by letter dated May 10, 2017.  (Coverage Denial Letter, attached as Exhibit A).  Likewise, as J.M. Drilling acknowledges, the Underlying Thibodeaux Plaintiffs also learned of Rockhill's coverage denial.  (J.M. Drilling Memorandum, p. 13).  At any time prior to Rockhill filing this suit, J.M. Drilling was free to file its own declaratory

action on the coverage issue in the forum of its choosing if it so desired.  Likewise, because Louisiana is a direct-action state, *see* La. Rev. Stat. Ann. § 22:1269, the Underlying Thibodeaux Plaintiffs were likewise free to name Rockhill as party to the underlying suit.  Based on these realities, J.M. Drilling's efforts to place Rockhill in an inequitable light for filing this suit only after both J.M. Drilling and the Underlying Thibodeaux Plaintiffs had ample time to first address the coverage issue is disingenuous, especially considering that Rockhill has filed this suit in the federal district in which J.M. Drilling has its principal place of business (Complaint, ¶¶ 1, 8).

Lastly, the entire tenor of J.M. Drilling's inequity argument ignores the reality that, in essence, declaratory actions are "always anticipatory in some sense" but that, without more, this does not make them inequitable.  *See Mead Corp. v. Stuart Hall Co., Inc.*, 679 F. Supp. 1446, 1450, 1454 (S.D. Ohio 1987).  As noted, both J.M. Drilling and the Underlying Thibodeaux Plaintiffs received notice of the coverage denial and both had ample time to pursue suits on their own accord but opted against doing so.  For J.M. Drilling to now argue that Rockhill somehow acted inequitably even though it acted with restraint and is utilizing the DJ Statute for its designed purpose ignores reality.  In essence, if J.M. Drilling's position is accepted, every declaratory action first brought by an insurer in a coverage dispute would be an inequitable, anticipatory filing that the insured or underlying plaintiff could simply avoid by filing a suit of their own.  Given the numerous Sixth Circuit courts considering declaratory actions brought by insurers on coverage issues, such an outcome could not possibly be favored.

In sum, J.M. Drilling has failed to establish that an equitable exception to the first-to-file rule should apply under the circumstances of this case.  That is, this is not one of the rare cases in which the first-to-file rule should be disregarded.  *See Baatz*, 814 F.3d at 792, 793.

## CONCLUSION

In conclusion, the Motion to Dismiss should be denied because (1) the Absent Parties are not necessary or indispensable parties, (2) the applicable factors militate in favor of this Court exercising jurisdiction over this declaratory action, and (3) the first-to-file rule applies.  For the foregoing reasons, Rockhill respectfully requests that this Court deny the Motion to Dismiss.

**RESPECTFULLY SUBMITTED** this ___ day of July, 2018.

EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.

By: *s/ Ronald T. Hill*_____

**RONALD T. HILL, ESQ., BPR#11283**
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
Knoxville, TN  37902
(865) 546-0500
rhill@emlaw.com
*Counsel for Plaintiff Rockhill Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date reflected on the electronic filing receipt, a copy of the foregoing document was filed electronically.  Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access the filing through the Court's electronic filing system.

EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.

By:  _s/ Ronald T. Hill_____
     Ronald T. Hill

1427893v2