**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

**ROCKHILL INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                   Case No. 1:18-cv-01050-STA-egb
                                                                    JURY DEMAND

**J.M. DRILLING, LLC,**

    **Defendant.**

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

Defendant J.M. Drilling, LLC ("J.M. Drilling") offers the following Reply to Plaintiff's Response (Doc. No. 16) to Defendant's Motion to Dismiss (Doc. No. 15):

Rockhill's Response is in conflict with Rule 19's basic tenant that cases should be examined "pragmatically" and interested parties should be joined "whenever feasible." *See* Fed. R. Civ. P. 19, 1966 Advisory Comm. Notes. It splits procedural hairs to obscure the practical reality of what it is asking this Court to do: issue a nonbinding but persuasive judgment about whether a non-party over which this Court has no jurisdiction may receive payment on its jury verdict (if upheld on appeal) from J.M. Drilling's insurer, rather than allowing another court of competent jurisdiction to answer that question along with other, substantive claims. When viewed in this way, it is clear that the Underlying Thibodeaux Plaintiffs are necessary and indispensable parties. Therefore, this action should be dismissed or, alternatively, stayed or transferred to the Western District of Louisiana, where the nearly identical, substantive action is pending.

**A. <u>Rule 19(a)(1)(B)(i): The Underlying Thibodeaux Plaintiffs' Absence May, "As a Practical Matter," Impair or Impede Their Ability to Protect Their Interests.</u>**

### 1. Adequate Representation is Part of the Rule 19(b) Dismissal Analysis, Not the 19(a) Threshold Analysis.

Rockhill's Response assumes that the Underlying Thibodeaux Plaintiffs can show an interest in this matter. (Doc. No. 16, Pl.'s Resp. Mot. Dismiss [hereinafter Pl.'s Resp.], p. 4.) Rather, Rockhill relies heavily on the idea that "there is no practical impairment under Rule 19(a)(1)(B)(i) because J.M. Drilling adequately represents the Absent Parties' interests." *Id*. However, Sixth Circuit case law is clear: "Adequate representation should be considered as a part of the Rule 19(b) analysis, and not the threshold Rule 19(a) analysis." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 668 (6th Cir. 2004).[1] There are two reasons for this. "First, the text of Rule 19(a)[(1)(B)(i)] mentions nothing about measuring adequacy of representation." *Id*. Rather, it has been read into Rule 19 by some courts due to similarities between it and Rule 24's test for intervention as of right, which *does* explicitly include adequate representation. *Id*. at 668-69. Both Rules were amended in both 1987 and 2007, but adequate representation has never been added to Rule 19(a). *Id*. Therefore, there is no reason to assume it is part of Rule 19(a).

"Second, the practical realities of joinder explain why consideration of adequate representation should occur as part of the Rule 19(b) analysis." *Glancy*, 373 F.3d at 668. "Joinder via Rule 19(a)[(1)(B)] provides defendants with a counterweight to plaintiffs' incentive to fail to join 'necessary' persons or entities whose presence could threaten the court's jurisdiction." *Id*. at 669 n. 11. Assuming that there is a problem with jurisdiction, the analysis must proceed to Rule 19(b) anyway. *Id*. at 669-70. To put it more plainly, to analyze representation as part of the Rule

---

[1] While Judge Moore did not command a majority vote on this point, it is part of the majority opinion in *Glancy*. Moreover, *Glancy* is the only reported Sixth Circuit case definitively addressing the issue, *id*. at 667, and it has never been overruled. *See Am. Express Related Servs. v. Bank One-Dearborn, N.A.*, 195 F. App'x 458, 461 n. 1 (6th Cir. 2006) (questioning *Glancy* but stating, "[W]e make no ruling on this largely academic question."). While this Court's unreported decision in *Williams-Sonoma Direct, Inc. v. Arhaus*, 304 F.R.D. 520, 533 (W.D. Tenn. Jan. 30, 2015), seems to read *American Express* as advocating for considering representation as part of the Rule 19(a) analysis, the *American Express* Court explicitly declined to make that ruling, as quoted *supra*. Therefore, Judge Moore's lengthy and well-reasoned opinion in *Glancy* should be followed.

19(a) necessity analysis renders Rule 19(b) superfluous and takes away a powerful tool for detecting forum-shopping. Thus, adequate representation has no application on the question of whether the Underlying Thibodeaux Plaintiffs are "necessary."

### 2. The Underlying Thibodeaux Plaintiffs' Absence from This Matter Impairs or Impedes Their Interests "As a Practical Matter."

As this Court recognized in *Williams-Sonoma Direct, Inc. v. Arhaus*, 304 F.R.D. 520 (W.D. Tenn. Jan. 30, 2015), a case touted by Rockhill, "[t]he key language in Rule 19(a)(1)(B)(i) is 'as a practical matter.'" *Id*. at 533. Even if adequate representation was a proper Rule 19(a) consideration, J.M. Drilling cannot represent the Underlying Thibodeaux Plaintiffs' interests "as a practical matter." Adequate representation requires that the two parties' interests be "completely identical." *See Glancy*, 373 F.3d at 675 (finding representation was not adequate where "[t]here is a similarity of interests, but the interests are not identical"). Where the parties' "distinct but overlapping interests could come into conflict," there cannot be adequate representation. *Id*.

Here, J.M. Drilling and the Underlying Thibodeaux Plaintiffs are directly adverse parties in the underlying, multi-million dollar personal injury action, which is presently on appeal. While they both may benefit from Rockhill's honoring its obligations under the insurance policy, their interests are still in conflict. Conflict between direct adversaries is the basis of the entire justice system. So strong is the presumption that directly adverse parties cannot share common interests that even attorneys are absolutely barred from representing both parties. *See* Tenn. Sup. Ct. R. 8, RPC 1.7(a)(1); ABA Model Rule 1.7(a)(1). To suggest that the Underlying Thibodeaux Plaintiffs' right to collect on a multi-million dollar judgment *against* J.M. Drilling can be adequately represented *by* J.M. Drilling is nonsensical.

Indeed, we have proof positive that the Thibodeauxes do not believe that J.M. Drilling will adequately represent their interests in this case: rather than allowing Rockhill and J.M. Drilling to

3

determine insurance coverage in this action, the Thibodeauxes filed their own declaratory action in Louisiana *after* this one was filed. Nor is Rockhill's suggestion that the Underlying Thibodeaux Plaintiffs can simply choose to intervene "practical." In order to intervene, the Thibodeauxes would have to hire an out-of-state lawyer to fight a complicated legal battle in a state they have never been to, incurring substantial costs. Moreover, this argument conflates Rule 19 and Rule 24.

Finally, it is illogical to claim that this Court's interpretation of the insurance contract will have no "practical" effect on the Louisiana Federal Action. As Justice Sotomayor recognized during her time in the Southern District of New York, "[T]his Court's necessary interpretation of the [contract], while it would only be persuasive authority for another court's interpretation of the contract, will undoubtedly have a *practical* effect on any subsequent action brought by [the absent party] concerning the [contract]." *Global Discount Travel Servs., LLC v. TWA*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997) (quoted in *Williams-Sonoma*, 304 F.R.D. at 532).[2] While the Underlying Thibodeaux Plaintiffs may not be *absolutely* bound by this decision, the Louisiana Court will undoubtedly look to this Court's interpretation of the contract as persuasive authority. Thus, as a *practical* matter, the outcome of this action would have an impact on the Underlying Thibodeaux Plaintiffs' interests.

## B. Rule 19(a)(1)(B)(ii): The Underlying Thibodeaux Plaintiffs' Absence Leaves the Parties at Risk of Incurring Inconsistent Obligations.

Next, Plaintiff makes a lengthy argument about the difference between "inconsistent obligations" and "inconsistent results." (Doc. No. 16, Pl.'s Resp., pp. 3-6.) While there is support for this distinction in case law, those cases are generally about mass tort or joint tortfeasor situations, where a defendant could potentially be found liable for the same underlying conduct in

---

[2] S*ee also Rangers Ins. Co. v. United Housing*, 488 F.3d 682, 684 (5th Cir. 1974) (agreeing with the district court that it is "nonsensical to suggest that a declaration, in this Court, of liability or non-liability will have no practical effect upon the claimants").

some cases but not in others.³ This case is different. If the appeal fails, there will be one payment from one entity to one beneficiary. Thus, in this case, unlike those cited by Rockhill, the judgment and the obligation are the same—Rockhill cannot both pay and not pay at the same time. *See Sch. Dist. v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 282 (6th Cir. 2009) ("Inconsistent obligations arise . . . when a party cannot simultaneously comply with the orders of different courts.").

Rockhill concedes that, if it loses this action, there may be a res judicata effect, but if it wins, there will be no res judicata effect and the matter can be relitigated in Louisiana. (Doc. No. 16, Pl.'s Resp., p. 5.) Rockhill even goes so far as to say that, even if it wins, it may choose to pay the claim despite a ruling that it has no contractual obligation to do so. *Id*. A party *choosing* not to follow a Court's judgment is surely not what Rule 19 contemplates for avoiding inconsistent obligations. Moreover, as Justice Sotomayor recognized in *Global Discount Travel Services*, this argument actually concedes the Rule 19(a)(B)(1)(ii) question: "Because res judicata will not bind any subsequent court to this Court's interpretation of the contract, . . . [the claimant] is at risk of having another court re-decide its rights and obligations under the Agreement. This situation is precisely what Rule 19 seeks to avoid." 960 F. Supp. at 708-09. In other words, Rockhill's argument admits that this Court's judgment will be nonbinding and the matter will be relitigated; to let it go on regardless defeats the purpose of Rule 19.

Moreover, it raises the question of why Rockhill wants to pursue this lawsuit: why would it retain counsel, draft a lawsuit, pay the filing fees, and fully litigate this action, only to do it all again in Louisiana? Rockhill's argument is illogical and in conflict with Rule 19's basic goals of

---

³ *See*, *e.g.*, *Field v. Volkswagenwerk AG*, 626 F.3d 293, 302 (3d Cir. 1980) (stating that inconsistent obligations do not result where "several persons are injured by the same tort and proof of damage is individual"); *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984) (stating the Rule's focus on inconsistent obligations is "due to the nature of joint and several liability" between joint tortfeasors); *GenScript Corp. v. AA Peptides, LLC*, 2010 U.S. Dist. LEXIS, at *8-9 (W.D. Ky. Aug. 27, 2010) ("Put simply, having to write a check to one claimant and not to another is not the sort of inconsistent obligation the clause addresses" (quoting 4 Moore's Federal Practice § 19.03)).

examining cases "pragmatically" and joining all parties "whenever feasible." *See* Fed. R. Civ. P. 19, 1966 Advisory Comm. Notes.

Based on the above and the arguments presented in its Motion to Dismiss (Doc. No. 15), J.M. Drilling has shown that the Underlying Thibodeaux Plaintiffs are necessary parties under both Rule 19(a)(1)(B)(i) and (ii). However, as both parties agree, they cannot be joined in this matter because the Court is without personal jurisdiction over them. (*See* Doc. No. 15, Def.'s Mot. Dismiss, p. 7; Doc. No. 16, Pl.'s Resp., p. 2.) Therefore, the next question for the Court is whether this action should be dismissed because their joinder is not feasible.

### C. Rule 19(b): The Complaint Should Be Dismissed Because the Underlying Thibodeaux Plaintiffs Are Indispensable.

The Court must dismiss the action if the absent, necessary party is also "indispensable" according to the factors set out in Rule 19(b). The guiding question for the Rule 19(b) analysis is "whether the Court should 'in equity and good conscience' dismiss the case." *Glancy*, 373 F.3d at 666. In its Motion to Dismiss, J.M. Drilling advanced a number of arguments and cited a number of cases holding that an insurance claimant is a necessary and/or indispensable party to a declaratory action between an insurer and the insured. (*See* Doc. No. 15-1, Def.'s Mot. Dismiss, p. 6.) Once J.M. Drilling established in its Motion to Dismiss that the Underlying Thibodeaux Plaintiffs are "arguably indispensable," the burden shifted to Rockhill to prove that they are not indispensable parties. *Invesco Inst. (N.A.), Inc. v. Paas*, 2008 U.S. Dist. LEXIS, at *27 (W.D. Ky. Nov. 6, 2008) (citing Sixth Circuit cases). Rockhill has not carried its burden.

#### 1. J.M. Drilling and the Underlying Thibodeaux Plaintiffs Will Be Prejudiced.

Rockhill's prejudice argument falls back on its argument about adequate representation. As discussed above, adequate representation is an appropriate consideration in the Rule 19(b) analysis, but the Underlying Thibodeaux Plaintiffs are not adequately represented by J.M. Drilling.

6

Next, Rockhill argues that the only prejudice J.M. Drilling and the Underlying Thibodeaux Plaintiffs will face from this action is "a decreased chance of recovery," a risk it claims "exists in any action involving this coverage issue, even if they are parties to it." (Doc. No. 16, Pl.'s Resp., p. 8). J.M. Drilling does not share Rockhill's cavalier view of being shut out from a multi-million dollar recovery. If the jury verdict is upheld on appeal, this case could decide whether the Underlying Thibodeaux Plaintiffs receive payment pursuant to that verdict. For them to not be involved in such an action would be both prejudicial and unjust. Indeed, in a case factually similar to this one, the Fifth Circuit found prejudice under Rule 19(b), stating it was "nonsensical to suggest that a declaration, in this Court, of liability or non-liability will have no practical effect upon the claimants, given the possibility (and now actuality) of their obtaining a judgment against the insured." *Rangers Ins. Co. v. United Housing*, 488 F.2d 682, 684 (5th Cir. 1974); *see also Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 n.5 (3d Cir. 1986).

Finally, both J.M. Drilling and the Underlying Thibodeaux Plaintiffs face the very real prejudice of having to relitigate this case in Louisiana. Rockhill concedes that the outcome of this action will not be binding on the Louisiana action. Therefore, after undertaking the time and expense of litigating this matter, J.M. Drilling will have to do it all over again in Louisiana. This prejudice cannot be overcome by protective provisions in the judgment. There is only one question before the Court: whether Rockhill must defend and indemnify J.M. Drilling. There is simply no way to parse or limit that yes-or-no question.

### 2. A Judgment Rendered in the Underlying Thibodeaux Plaintiffs' Absence Would Not Be Adequate.

A judgment cannot be adequate when it does not definitely settle the question before the Court. *See Invesco*, 2008 U.S. Dist. LEXIS, at *37. Where the Court's decision does not actually settle the dispute, no "meaningful relief can [] be accorded." *Local 670, United Rubber v. Int'l*

7

*Union, United Rubber*, 822 F.2d 613, 618 (6th Cir. 1987). Regardless of their other interests in being included, the Underlying Thibodeaux Plaintiffs' input in the case is necessary to truly settle the questions at issues. In *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001), the case cited by Plaintiff, the contract at issue was the interpretation of an arbitration agreement, a straightforward, solely legal question. *Id.* at 203. Here, Rockhill's position that it does not have to defend or indemnify J.M. Drilling is based on factual issues, such as its allegation that Mr. Thibodeaux's injury does not meet its definition of an "occurrence." (*See* Doc. No. 1, ¶¶ 39, 46.) The Underlying Thibodeaux Plaintiffs' input would help the Court to resolve these issues. *See Invesco*, 2008 U.S. Dist. LEXIS, at *37 (holding that judgment rendered would be inadequate where "[w]ithout [the absent party] represented the Court believes it would be difficult to fully determine the issue [for judgment]").

### 3. The Louisiana Federal Action Presents an Identical, More than Adequate Remedy to Plaintiff.

Rockhill does not disagree that the Louisiana Federal Action presents an adequate remedy; it simply argues that this factor is not outcome determinative. (*See* Doc. No. 16, Pl.'s Resp., p. 10.) It is true that this factor does not necessarily win out when the other three factors in Rule 19(b) present strong reasons for retaining the case. *See PaineWebber*, 276 F.3d at 205. "Some additional interest of either the absent party, the other properly joined parties or entities, or the judicial system must also be present." *Local 670,* 822 F.2d at 622. Here, as discussed above and in Defendant's Motion to Dismiss, there are other interests present, including the Underlying Thibodeaux Plaintiffs' interest in being involved in the judgment, all the parties' interests in having consistent outcomes, J.M. Drilling's interest in not having to relitigate this case in Louisiana, the Sixth Circuit presumption that substantive cases should overcome declaratory actions (discussed more below), the Louisiana Court's interest in controlling cases within its jurisdiction, and this

Court's interest in judicial economy and efficiency to not waste its time on issuing what amounts to little more than a nonbinding advisory opinion. A strict reading of *Local 670* says that just one of these interests would be sufficient. *See id.* ("**Some additional interest** [singular] of **either** the absent party, the other properly joined parties or entities, or the judicial system must also be present" (emphasis added)). Together, these many interests, *along with* the availability of an adequate alternative remedy, must weigh in favor of dismissing this action.

**D. Sixth Circuit Case Law is Clear that a Declaratory Action Should Be Dismissed or Stayed When a Related Substantive Suit is Pending in Another Court.**

As noted in J.M. Drilling's opening brief, the first-to-file rule is discretionary, and courts may dispense with it when equity so demands, particularly in the context of a coercive action filed after a declaratory action. *Zide Sport Shop of Ohio, Inc.*, 16 F. App'x 433, 437 (6th Cir. July 31, 2001); *AmSouth Bank v. Dale*, 386 F.3d 763, 791 (6th Cir. 2004). In fact, case law creates a presumption that a first-filed declaratory action should be dismissed or stayed in favor of the substantive suit. *Id.*[4] This exception to the first-to-file rule includes "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *UAW v. Dana Corp.*, 1999 U.S. Dist. LEXIS 22525 (N.D. Ohio Dec. 6, 1999). This Court has stated:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit . . . . [W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum, a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.

---

[4] *See also Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551-52 (6th Cir. 2007) (discussing the "presumption that the first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit"); *DigiTrax Entm't, LLC V. Universal Music Corp.*, 21 F. Supp. 3d 917, 926 (E.D. Tenn. 2014) ("Yet, the case law makes clear that when faced with a declaratory judgment action and a coercive suit concerning the underlying issues, the presumption is in favor of dismissing or staying the declaratory action.").

*Odyssey Med., Inc. v. Augen Opticos, S.A. de C.V.*, 2011 U.S. Dist. LEXIS 69028, at *12 (W.D. Tenn. June 27, 2011); *see also Yeaggy v. Sunshine*, 2015 U.S. Dist. LEXIS 62128 (S.D. Ohio May 12, 2015).

Since the filing of Defendant's Motion to Dismiss, the Underlying Thibodeaux Plaintiffs have amended their Louisiana complaint to seek enforcement of judgment and allege breach of contract directly against Rockhill. (See Exhibit "A"). Now, that action consists of one declaratory action identical to this one (filed by the Underlying Thibodeaux Plaintiffs), two breach of contract claims (a crossclaim filed by J.M. Drilling against Rockhill and a direct claim by the Underlying Thibodeaux Plaintiffs against Rockhill), and an enforcement of judgment claim (filed by the Underlying Thibodeaux Plaintiffs against Rockhill). Thus, contrary to Rockhill's argument that the Louisiana action is "an entirely non-coercive declaratory judgment action concerning admittedly identical issues," that action is decidedly substantive and coercive.

### E. In the Alternative, the Court Should Stay or Transfer This Action to the Louisiana District Court.

Finally, Defendant's Motion to Dismiss asks that, as an alternative to dismissal, the Court either stay this case or transfer it to the Western District of Louisiana. Plaintiff's Response does not address these alternatives. However, Sixth Circuit case law is clear that this Court would be entirely within its discretion to stay or transfer this case. Indeed, it is the *presumption* that the Court will either dismiss the action or stay it under the circumstances here. *Certified Restoration*, 511 F.3d at 551-52. If the Court does not wish to stay or dismiss the case, transfer would also be an efficient solution for this Court, the Louisiana Court, and the parties. *Yeaggy*, 2015 U.S. Dist. LEXIS 62128, at *3. The Louisiana Court could then address all the issues at the same time, rather than having to relitigate them.

Respectfully submitted,

GILBERT McWHERTER
SCOTT BOBBITT PLC

*s/ J. Brandon McWherter*
J. BRANDON McWHERTER #21600
341 Cool Springs Blvd., Suite 230
Franklin, Tennessee 37067
(615) 354-1144
bmcwherter@gilbertfirm.com

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 N. Highland Avenue
Jackson, Tennessee 38301
(731) 664-1340

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the foregoing has been mailed electronically via the Court's electronic filing system to all counsel of record, on this July 31, 2018:

Ronald T. Hill
Egerton, McAfee, Armistead & Davis, P.C.
900 S. Gay Street, Suite 1400
Knoxville, TN 37902

*s/ J. Brandon McWherter*