# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

**ROCKHILL INSURANCE COMPANY,**

    **Plaintiff,**

v.                                            Case No. 1:18-cv-01050-STA-egb

**J.M. DRILLING, LLC,**

    **Defendant.**

## ORDER GRANTING, IN PART, MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER OR STAY ROCKHILL'S DECLARATORY ACTION AND TRANSFERRING THIS MATTER PURUSANT TO 28 U.S.C. § 1404

On March 26, 2018, Plaintiff Rockhill Insurance Company filed a Complaint for Declaratory Judgment against Defendant J.M. Drilling, LLC.[1] (ECF No. 2.) Defendant has filed a Motion to Dismiss, or, in the Alternative, to Transfer or Stay Rockhill's Declaratory Action. (ECF No. 15.) Plaintiff has responded to the motion (ECF No. 16), and Defendant has filed a reply to the response. (ECF No. 19.) The Court finds that the portion of the motion seeking to transfer the action is well taken and should be **GRANTED**, and, therefore, this matter is hereby **TRANSFERRED** to the United States District Court for the Western District of Louisiana, Lafayette Division. All other portions of Defendant's motion are **DENIED**.

---

[1] The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

Background

Plaintiff has not objected to Defendant's recitation of the background of this matter. Consequently, the Court will adopt Defendant's version of the events leading up to the present lawsuit as follows.

The declaratory judgment action in this Court arises out of a Louisiana personal injury case. In that case, John and Amy Thibodeaux, individually and on behalf of their daughters, Gabrielle Thibodeaux and Emily Thibodeaux, filed suit against J.M. Drilling and others as a result of injuries allegedly sustained by John Thibodeaux during a work-related accident. The personal injury case was filed in the 15th Judicial Court for the Parish of Lafayette, Louisiana, on August 24, 2015. In January 2017, all defendants in the Underlying Thibodeaux Lawsuit were dismissed except for J.M. Drilling who remained as the sole defendant.

On March 21, 2018, the Louisiana State Court granted the Underlying Thibodeaux Plaintiffs' partial motion for summary judgment on liability and also granted a motion in limine which effectively found no comparative fault against John Thibodeaux, leaving only the issue of damages for trial. A jury trial was held March 26-29, 2018, and the jury returned a verdict in favor of the Underlying Thibodeaux Plaintiffs in the amount of $3,698,118. On April 6, 2018, the Louisiana State Court entered judgment against J.M. Drilling for the amount awarded by the jury and in favor of Bellsouth Communications, LLC, Intervenor, against J.M. Drilling for the amount of worker's compensation benefits paid to John Thibodeaux through the date of the jury trial.

Admiral Insurance Company was J.M. Drilling's primary commercial liability insurer, with limits of $1,000,000.00. Admiral accepted coverage for the allegations in the Underlying Thibodeaux Lawsuit and retained counsel to defend J.M. Drilling. J.M. Drilling's excess insurer was Rockhill Insurance Company. Rockhill's commercial follow form excess insurance policy

had limits of $5,000,000.00. The Rockhill excess policy lists Admiral as the underlying primary insurer in the Schedule of Underlying Insurance.

On March 26, 2018, Rockhill filed this declaratory judgment action against J.M. Drilling, seeking a declaration that Rockhill has no duty to defend and indemnify any party for any of the claims asserted in the Underlying Thibodeaux Lawsuit. The action was brought by Rockhill under the Federal Declaratory Judgment Act. The only parties to this suit are Rockhill and J.M. Drilling.

On April 12, 2018, the Underlying Thibodeaux Plaintiffs filed a separate declaratory judgment action in the United States District Court for the Western District of Louisiana, Lafayette Division, Civil Action No. 6:18-0050. In the Louisiana Federal Action, the Underlying Thibodeaux Plaintiffs named as defendants J.M. Drilling, Admiral Insurance Company, Rockhill Insurance Company, and Bellsouth Telecommunications. Rockhill has filed a Motion to Transfer the Louisiana Federal Action to this Court, which is opposed by the Underlying Thibodeaux Plaintiffs, J.M. Drilling, and Bellsouth. J.M. Drilling has filed a cross-claim against Rockhill for breach of contract and bad faith in the Louisiana Federal Action; thus, both declaratory and coercive claims exist in that case.[2]

Defendant J.M. Drilling has moved this Court to dismiss the present action under Rule 19 of the Federal Rules of Civil Procedure on the ground that the Underlying Thibodeaux Plaintiffs and Bellsouth, the workers compensation carrier that intervened in the Underlying Thibodeaux Action, are necessary and indispensable parties who have not been joined in this case and cannot

---

[2] Since the filing of Defendant's Motion to Dismiss, the Underlying Thibodeaux Plaintiffs have amended their complaint in the Louisiana Federal Action to seek enforcement of the judgment and to allege breach of contract directly against Rockhill. (ECF No. 19-1.)

be joined because of this Court's lack of personal jurisdiction over them.³  In the alternative, Defendant asks the Court to decline to exercise its discretionary jurisdiction over this action in light of the Louisiana Federal Action pending in the Western District of Louisiana.  Finally, if the Court declines to dismiss the action, Defendant requests that this case be stayed or transferred to the Western District of Louisiana.

Plaintiff's response addresses the portion of Defendant's motion seeking to dismiss the action but does not address the portion seeking to transfer or stay the action.

Analysis

The Court need not decide whether this matter should be dismissed because the Court finds that the matter should be transferred to the Western District of Louisiana under 28 U.S.C. § 1404(a).  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The purpose of § 1404(a) is to protect litigants, witnesses, and the public against unnecessary expense and inconvenience. *See Mardini v. Presidio Developers, LLC*, 2011 WL 111245 at *6 (E.D. Tenn. Jan.13, 2011) (citing *Inghram v. Universal*

---

³ Rule 19(a) provides as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

4

*Indus. Gases, Inc.*, 2006 WL 306650 at *4 (E.D. Tenn. Feb. 8, 2006)). The district court has broad discretion over whether to transfer a case under this section. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citation omitted).

To transfer an action under § 1404(a) the following three requirements must be met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Applied Energy Techs., Inc. v. Solar Liberty Energy Sys., Inc.*, 2009 WL 2777079 at *5 (E.D. Mich. Aug. 27, 2009) (citation omitted). Moreover, deciding a motion to transfer venue under § 1404(a) requires consideration of certain "case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

> A district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice."

*Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citation omitted). Other interests to be considered are a "plaintiff's choice of forum, location of documents, . . . possibility of prejudice in either forum, and the practical problems associated with trying the case expeditiously and inexpensively." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (citing *W. Am. Ins. Co. v. Potts*, 1990 WL 104034 at *2 (6th Cir. July 25, 1990)). In weighing these interests, a plaintiff's choice of forum, though generally given deference, may be overcome by an appropriate showing by the defendant. *ImagePoint Inc. v. Keyser Indus., Inc.*, 2005 WL 1242067 at *3 (E.D. Tenn. May 25, 2005).

The interest of justice alone may require the transfer of an action to another district court based on "the desire to avoid multiplicity of litigation involving a single transaction." *Hooker v. Burson*, 960 F. Supp. 1283, 1291 (M.D. Tenn. 1996) (citing *Coffey v. Van Dorn Iron Works*, 796

F.2d 217, 220 (7th Cir.1986)); *see also Donald v. Seamans*, 427 F. Supp. 32, 33 (E.D. Tenn. 1976) ("[When] 'the interest of justice' is paramount, and [when] the comparative convenience of the transferee and transferor forums is not significant, transfer under § 1404(a) is appropriate."). Thus, a showing that the interest of justice would be better served by transfer may alone be sufficient to overcome a plaintiff's choice of forum. *Jabo's Pharmacy, Inc. v. Cephalon, Inc.*, 2010 WL 3851966 at *2 (E.D. Tenn. Sept. 27, 2010). In considering the interest of justice, the Court looks at factors such as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Id.* (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).

"No one factor is dispositive; transfer is appropriate if the balance of these factors 'strongly' favors trying it in the transferee district." *Donia v. Sears Holding Corp.*, 2008 WL 2323533 at *2 (quoting *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998)). The party seeking transfer under § 1404(a) bears the burden of establishing that the balance of relevant factors weighs in favor of transfer. *Levy v. Cain, Watters & Assoc., PLLC*, 2010 WL 271300 at *9 (S.D. Ohio Jan.15, 2010) (citations omitted). Thus, in this case, Defendant J.M. Drilling has the burden of showing that transfer to the Western District of Louisiana is appropriate.

Looking at the factors required in making a transfer decision under § 1404(a), the Court finds that the balance of relevant factors weighs in favor of transfer. Not only is it uncontested that this matter could have been brought in the Western District of Louisiana, there is currently a similar action pending in that district. *See Maize v. Walden Security*, 2010 WL 1257974 at *2 (E.D. Tenn. Mar. 25, 2010) (noting that the Court must consider "whether the action could have been brought in the proposed transferee division"); *see also Returns Distribution Spec., LLC v. Playtex Prods., Inc.*, 2003 WL 21244142 at *6 (W.D. Tenn. 2003) (finding that the threshold

consideration under § 1404(a) is whether the action is one which could have been brought initially in the proposed transferring district).

Next, Defendant's argument that all necessary and indispensable parties have not been joined in this matter militates in favor of a finding that the interest of justice and judicial economy weigh in favor of transfer. As noted by Defendant, a claimant in the Underlying Thibodeaux Plaintiffs' position generally is a necessary party in a declaratory judgment action brought to determine insurance coverage for the claim. *See e.g., Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 n. 5 (3rd Cir. 1986) ("[I]n a declaratory judgment proceeding involving an [insurance] policy, an injured person is a 'necessary and proper party.'"); *Ranger Ins. Co. v. Events, Inc.*, 20014 WL 2004545 at *5 (E.D. La. Sept. 8, 2004) (concluding that claimants seeking damages against an insured were indispensable parties under Rule 19(a) to a declaratory judgment action brought by the insurer against the insured and seeking to establish policy coverage provisions).

A decision in this case that coverage does not exist under the Rockhill policy would affect the Underlying Thibodeaux Plaintiffs' ability to recover on the judgment against J.M. Drilling. Moreover, the outcome in this case could be inconsistent with the outcome of the Louisiana Federal Action, which involves the same coverage issues and in which the Underlying Thibodeaux Plaintiffs and Bellsouth are parties. The absence from this lawsuit of the Underlying Thibodeaux Plaintiffs and Bellsouth would impair their ability to protect their interest and could subject them to inconsistent judgments concerning coverage of the Rockhill policy. Rockhill, however, will have the opportunity to argue its position if this matter is transferred and, thus would not be prejudiced by a transfer.

Also, as noted by Defendant, the parallel action pending in the Western District of Louisiana includes both coercive components (J.M. Drilling's crossclaim against Rockhill for

breach of contract and the Underlying Thibodeaux Plaintiffs' claim for breach of contract against Rockhill) and declaratory components (the Underlying Thibodeaux Plaintiffs' original claims for declaratory relief). All the interested parties are joined in the Louisiana Federal Action and, thus, any declaratory judgment would be binding on all the parties, making it the more appropriate forum for resolution of this dispute.

The defendants in *Jabo's Pharmacy* moved to transfer their matter to the United States District Court for the Eastern District of Pennsylvania where there was related litigation. 2010 WL 3851966 at *2. As in the present case, the "primary reason that defendants offer to support a transfer of venue is the existence of long-standing litigation in the Eastern District of Pennsylvania involving multiple actions that raise the same legal claims with the same or similar factual allegations as this case." *Id.* at *3. Additionally, "plaintiff concedes that its complaint is substantially similar to the actions already pending in Pennsylvania. *Id.* Here, there is no dispute that the parties have been engaged in "long-standing litigation" in the Western District of Louisiana and that the present complaint is "substantially similar" to the declaratory action pending in the Western District of Louisiana.

In deciding to transfer the case, the *Jabo's Pharmacy* Court reasoned as follows:

> The court finds that the "interests of justice" factor is paramount and determinative in this case, requiring a transfer of venue. "Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal quotation marks and citation omitted). This case is clearly related to the very similar litigation in the Eastern District of Pennsylvania, as it concerns the same patent, the same settlement agreements concerning that patent, and the same allegations regarding the effects of those settlement agreements on free trade. The judge handling the cases in Pennsylvania is certainly familiar with applicable law and the underlying factual basis of the claims, and is therefore best suited to try this case. In addition, transferring the case will avoid duplicative litigation and promote judicial economy. Therefore, the court will grant the motions to transfer filed by Defendants.

*Id.*

The Court in *Boys v. Mass Mut. Life Ins. Co.*, 2013 WL 3834010 at *1–5 (E.D. Tenn. July 24, 2013), relied on the reasoning in *Jabo's Phamacy* in granting a motion to transfer.

> As MassMutual correctly asserts, and as noted above, the consideration of the interests of justice—considerations of judicial economy included—may be determinative in deciding whether to grant or deny transfer. In weighing the interests of justice, a district court should consider, among other factors, the interest and benefit of trying related litigation together and in having a judge who is familiar with the applicable law try the case. Thus, the fact that there is related litigation in the transferee court is "'a significant factor in considering the interest of justice factor.'" Indeed, "litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids [duplicative] litigation and inconsistent results."

*Id.* at *5 (citations omitted).

In its response, Rockhill points out that this declaratory action was filed before the Louisiana Federal Action. Under the "first-to-file rule," when actions involving nearly identical parties and issues have been filed in two different district courts, the Court in which the first suit was filed generally should proceed to judgment. *See Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 F. App'x. 433, 437 (6th Cir. 2001) ("The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank."); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F3d. 535, 551 (6th Cir. 2007). "However, district courts have discretion to dispense with the first-to-file rule when equity so demands." *DigiTrax Entm', LLC v. Universal Music Corp.*, 21 F. Supp. 3d 917, 925 (E.D. Tenn. 2014). For example, the first-to-file rule "much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment."[4] *Encore Furniture*

---

[4] "Coercive relief" is defined as "[j]udicial relief, either legal or equitable, in the form of a personal command to the defendant that is enforceable by physical restraint." *Black's Law Dictionary* 1317 (8th ed. 2004). "Coercive relief includes suits seeking injunctions as well as

9

*Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 668-69 (M.D. Tenn. 2017). And, Courts may decline to enforce the rule when the record contains evidence of forum shopping, bad faith, or anticipatory declaratory actions. *See AmSouth Bank v. Dale*, 386 F.3d 763, 791 n. 8 (6th Cir. 2004). In determining the applicability of the rule, a Court should consider "(1) the chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake." *Smithers–Oasis Co. v. Clifford Sales & Mktg.*, 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002).

"A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Zide*, 16 F. App'x at 437.

[T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment .... Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor the substantive suit.

*Certified Restoration*, 511 F.3d at 551-52 (quoting *AmSouth Bank*, 386 F.3d at 791 n. 8); *see also UAW v. Dana Corp.*, 1999 WL 33237054 at *6 (N.D. Ohio Dec. 6, 1999) (stating that, in applying the first-filed rule to a declaratory judgment action, "the real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict") (citation omitted)).

"[C]oercive actions . . . should with few exceptions be given precedence over declaratory judgment actions, even when a declaratory judgment action presenting similar parties and issues is filed first." *Clear!Blue, LLC v. Clear Blue, Inc.*, 521 F. Supp. 2d 612 (E.D. Mich. 2007). In "[c]ases construing the interplay between declaratory judgment actions and suits based on the

---

suits seeking damages." *Chaffee McCall, LLP v. World Trade Ctr. of New Orleans*, 2009 WL 322156 at *5 (E.D. La. Feb. 9, 2009) (citation omitted).

merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *AmSouth Bank*, 386 F.3d at 781 n.8.

In the present case, the Court will not apply the first-to-file rule because the subsequently filed Louisiana Federal Action is both a declaratory action and a coercive, substantive breach of contract action. Furthermore, unlike in this case, all the interested parties are also parties to the Louisiana Federal Action. Additionally, "the issues and claims at stake" are substantially the same, and there has been long-standing litigation in Louisiana over the events giving rise to the present action.

Next, the Court must consider whether it would be inconvenient to require Rockhill and its witnesses to appear in the Louisiana Federal Action. "The convenience of the witnesses, is one of the most important factors in considering a motion to transfer venue." *See Applied Energy Techs., Inc.*, 2009 WL 2777079 at *6 (citation omitted). Rockhill has not claimed hardship or provided evidence that potential witnesses and proof would not be readily available in the Western District of Louisiana. Given the absence of any claim of hardship, the interests of justice and judicial economy are determinative in this transfer request.

In summary, the Underlying Thibodeaux Plaintiffs' interest in litigating this matter, all the parties' interests in having consistent outcomes, Defendant J.M. Drilling's interest in not having to litigate a declaratory action in both Tennessee and Louisiana, the presumption that substantive cases should take precedence over declaratory actions, the Louisiana Court's interest in controlling cases within its jurisdiction, and this Court's interest in judicial economy and efficiency weigh in favor of transfer. *See Boys*, 2013 WL 3834010 at *1–5 (transferring the action from Tennessee to New Jersey based on the equities).

Accordingly, the portion of Defendant's motion seeking to dismiss or stay the action is **DENIED**. The portion of the motion seeking to transfer the action to the Western District of Louisiana is **GRANTED**. This matter is hereby **TRANSFERRED** to the United States District Court for the Western Division of Louisiana, Lafayette Division, for all further proceedings pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: October 30, 2018.